UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEE JUNDANIAN | ) |
|           Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
|    v. | ) |
| | )      C.A. No. |
| THE TOWN OF UXBRIDGE *By and Through its* | ) |
| *Select Board and Select Board sitting as the Town's* | ) |
| *Board of Water and Sewer Commissioners;* and | ) |
| STEPHANIE L'ETALIEN, *in her capacity as the* | ) |
| *Treasurer for the Town of Uxbridge* | ) |
|           Defendant | ) |
| | ) |

## **COMPLAINT**

### **INTRODUCTION**

The Plaintiff, Lee Jundanian (hereinafter "LJ" or "Plaintiff") has filed the instant case to seek damages under 42 U.S.C. 1983 against the Town of Uxbridge by and through its Select Board sitting in said capacity as well as in its capacity as the Town's Board of Water and Sewer Commissioners (hereinafter the "Town" or "Defendant") resulting from deprivations of his Constitutional rights to equal protection (class of one) and due process as protected by the 5th and 14th Amendments to the Constitution. Plaintiff also seeks damages that have resulted from the Town's unlawful regulatory taking without just compensation in violation of the United States Constitution and the Massachusetts Declaration of Rights.

In the within action, the Plaintiff seeks damages resulting from the Town's efforts to thwart the construction of an approved residential subdivision project located on his property on Kempton Road and East Street in the Town.

### **PARTIES**

1. Plaintiff, Lee Jundanian is a natural person and property owner with an interest in real property located at East Street and Kempton Road in Uxbridge, MA.

1

2.  Defendant, the Town of Uxbridge, is being sued by and through its Select Board and is a municipality and governmental body corporate with principal offices located at 21 South Main Street, Uxbridge, MA.

3.  Defendant, Stephanie L'Etalien, is the Treasurer of the Town of Uxbridge and is being sued in that official capacity.

### JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant(s) are a Massachusetts governmental entity and, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this jurisdiction.

### FACTS AND TRAVEL

**Background**.

6.  By way of quitclaim deed dated December 16, 2025 and recorded in the Worcester County Registry of Deeds at Book 73048, Page 152, Plaintiff is now the record owner of certain real property located at East Street and Kempton Road in Uxbridge, Massachusetts, which property is more particularly identified as Uxbridge Assessor's Map 36, Lots 3895 & 3866 (hereinafter the "Property").

7.  Prior to taking ownership, the Property was owned by Omega Financial Services, LLC, which is a former Maryland limited liability company that was owned by Plaintiff and is currently within its corporate winding up period post dissolution.

8.  As part and parcel to the winding up process, Omega has assigned all of its rights, title and interest in any claims related to the Property to Plaintiff.

9.  Omega purchased the Property and certain land that was previously part and parcel thereto from the Roman Catholic Archbishop of Boston on September 26, 2013 (hereinafter the "Original Parcel").

10. The Original Parcel consisted of approximately 19.73 acres of vacant land located at 340 East Street in Uxbridge.

11. Following the purchase of the Original Parcel, Omega developed a plan to divide a portion of the Original Parcel into five (5) single family frontage lots located along East Street and Kempton Road, via the "Approval Not Required" (hereinafter "ANR") process provided by M.G.L. c. 41 § 81P.

12. The Planning Board endorsed Omega's ANR Plan on January 29, 2014 and Omega recorded said ANR Plan in the Worcester County Registry of Deeds at Plan Book 905, Page 60 on February 3, 2014 (hereinafter the "2014 ANR Plan)."

13. The 2014 ANR Plan resulted in the division of the Original Parcel into six (6) parcels, five (5) of which were the aforesaid residential single-family frontage lots, with one (1) remaining 13.43+/- acre remaining parcel that Plaintiff intended to later develop as a residential subdivision project to be accessed by a new road.

14. Following endorsement of the 2014 ANR Plan, Omega duly applied for and received approval from the Uxbridge Select Board sitting as the Board of Water & Sewer Commissioners to connect the five (5) single-family residential frontage lots to the Town's public water supply system.

15. The Select Board granted Omega permission to connect without incident and/or without expressing any significant concern regarding the ability of the Town's public water supply system to handle the additional connections.

16. Thereafter, Omega sold the five (5) frontage lots to third parties and directed its design professionals to begin designing the seven (7) lot "Woodland Park" residential subdivision project on the remaining land.

17. It is noteworthy that at the time, the acreage of the land remaining from the Original Parcel was approximately 13.43 acres and Plaintiff acquired an additional 2.62 acres of adjacent land, together which now constitute the 16.05 acre "Property" that is the subject of this dispute.

18. Omega has assigned all of its rights, title and interest in any claims related to the Property to Plaintiff.

19. The Property consists of approximately 16.05 acres of vacant land and is located within the "Residence C" Zoning District.

20. Relevant to this Complaint, the Property is located within the Town's "East Street Water District" (hereinafter the "District").

21. Plaintiff, through design professionals, previously engineered a development plan for the Property consisting of a seven (7) lot residential subdivision called "Woodland Park" (hereinafter the "Project").

22. The Project received definitive subdivision plan approval from the Uxbridge Planning Board on or about May 25, 2016.

23. The approved plans for the Project required the seven (7) approved subdivision lots to be connected to the Town's public water supply system in the District.

24. Following receipt of Planning Board approval for the Project, Plaintiff (through his predecessor, Omega) began the process of preparing to construct the Project's public improvements.

25. As part of that process and as required by the Planning Board in its conditions of definitive subdivision approval, Plaintiff sought approval from the Town's Department of Public Works (hereinafter the "DPW") to connect the Project to the Town's public water supply system.

26. Upon doing so, Plaintiff (through his design professionals) was told, for the first time, that the Town had enacted a moratorium on connections to the public water supply system located in the District approximately one (1) month before the Uxbridge Planning Board issued Definitive Subdivision approval for the Project.

27. As such, the Town denied Plaintiff the ability to connect the Project to the Town's public water supply system.

28. As a direct and proximate result of the Town's refusal to permit Plaintiff to connect the Project to its public water supply system, the Plaintiff was and currently remains unable to construct the Project as currently designed.

29. The Project, as designed, cannot be constructed with wells due to a number of the site constraints including wetlands, proximity of wells to proposed septic systems, and other site-specific issues.

**The Moratorium**.

30. On April 23, 2016, the Uxbridge DPW Director, Benn S. Sherman, P.E., sent a memorandum to the Uxbridge Select Board sitting as the Board of Water & Sewer Commissioners (hereinafter the "BOS") describing the existence of major functional issues concerning the public water supply system in the District.

31. In sum, Mr. Sherman's memorandum claimed the East Street booster station could not service additional water connections because it had been designed to service only One

Hundred Fifty (150) homes but was in fact servicing approximately One Hundred and Seventy (170) homes.

32.   In his letter, Mr. Sherman requested that the BOS consider imposing a moratorium on new water connections in the District and requested the Board consider imposing a moratorium on new connections within the District.

33.   The BOS took the issue up at its April 25, 2016 meeting.

34.  At the meeting, Mr. Sherman explained that the principal issue with the public water supply system in the District related to pressure, as opposed to supply.

35.   This contention has been reiterated on a number of occasions by Mr. Sherman and/or other Town officials.

36.   Despite the pendency of the Project, Plaintiff was not advised or notified that the BOS would be considering a moratorium that would significantly and detrimentally affect his property rights related to the Project.

37.   On April 25, 2016, the BOS allegedly voted to impose a moratorium on all new connections to the municipal water system in the District (hereinafter the "Moratorium").

38.   The Moratorium has no sunset provision and is indefinite in the time period for which it will remain imposed.

39.   At the time that the Moratorium was allegedly passed by the BOS, the Project's definitive plan had been under review by the Town's Planning Board for nearly eighteen (18) months, during which time all relevant municipal department heads, including the DPW, were given the opportunity to provide input and comments.

40.   The Planning Board closed the public hearing on the Project on February 10, 2016, which was two (2+) months <u>before</u> the BOS allegedly enacted the Moratorium.

41.  The Project received approval on May 25, 2016, which is more than a month <u>after</u> the BOS allegedly passed the Moratorium.

**The Impact of the Moratorium and Town's Conduct Regarding the Same**.

42.  Plaintiff was not advised during the multi-year Planning Board process that the Moratorium would be adopted or that it was even so much as being considered by the Town.

43.  Upon information and belief, the development plans were circulated to all Town Departments, including the DPW and the BOS (sitting as the Board of Water & Sewer Commissioners) months before the Planning Board issuing Definitive Subdivision Plan approval for the Project.

44.  Neither the DPW nor the BOS (or any other Town Department) issued comments or correspondences indicating that a Moratorium was being considered.

45.  The Planning Board's Definitive Subdivision Plan approval for the Project required a pre-construction meeting and 'compliance with the DPW's regulatory requirements' but made no mention of the Moratorium.

46.  Plaintiff was unaware that the BOS had allegedly adopted the Moratorium at the time that the Planning Board issued its approval.

47.  It was not until Plaintiff's design professionals sought approval from the DPW to proceed with the Project's subdivision improvements did he learn that the Town had allegedly adopted the Moratorium.

48.  The Moratorium has remained in full force and effect since April 2016 and has had the practical effect of preventing Plaintiff with constructing the Project, thereby stripping him of valuable property rights.

49. Initially, Plaintiff complied with the Town and waited for improvements to be made to upgrade the East Street Service Area's public water supply system so as to handle the additional public water supply needs, including those related to the Project.

50. However, upon information and belief, since 2016, the Town has not taken any substantial action to upgrade the District's public water supply system or to otherwise address its deficiencies.

51. Over the years, Plaintiff has repeatedly sought and been denied the ability to connect the Project to the District's public water supply system.

52. When the Moratorium was (allegedly) imposed in April 2016, Mr. Sherman advised the Select Board that there were approximately One Hundred Seventy (170) connections in the District, but by 2025, Mr. Sherman claimed there were about One Hundred Ninety-Two (192) connections, notwithstanding the Town's ongoing enforcement of the Moratorium against Plaintiff.

**The Tabor Road Cistern Systems**.

53. In or about 2019, another real estate developer sought to develop four (4) residential lots located on Tabor Road.

54. These lots and Tabor Road are both located within the District in close proximity to the Property.

55. The Tabor Road real estate developer submitted a proposal to the BOS (sitting as the Board of Water & Sewer Commissioners) proposing to connect those four (4) lots to the Town's public water supply system by way of including a supplemental water cistern system to be incorporated into each future residential home.

8

56. On March 25, 2019, the BOS held a public hearing on the Tabor Road proposal and approved four (4) cistern-based connections for those properties.

57. Specifically, the BOS approved connections for those residential properties conditioned on their installation of in-basement cistern systems that fill up with water during off-peak hours.

58. The cistern systems were designed collaboratively by GeoInsight (the developer's hydraulic engineer), Tata & Howard (the Town's water consultant) and Benn Sherman, the DPW Director.

59. The cistern systems are designed to be pressure-neutral by refilling only during off-peak hours via timers.

60. The purpose of the cistern systems was to create a privately funded supplementary design component that would allow properties located within the District to connect to the public water supply system, as the cistern tanks would fill up once a day during off-peak hours, having a pressure-neutral impact on the remainder of the District.

61. At the March 25, 2019 hearing, Town Officials acknowledged the cistern systems would work from a technical standpoint and would fully address pressure concerns by having the cistern tanks refill during off-peak hours when demand for water is lower.

62. At the March 25, 2019 hearing, BOS Chairman Butler specifically acknowledged the following:

> "We as a Board cannot and will not act arbitrarily and capriciously in determining which ones we're going to allow and which ones we're going to disallow."

63. The cistern systems refill on a timer during off-peak hours and can be removed when Town upgrades to the District's public water supply system occur.

64. During this review process, Town officials, including the DPW Director and members of the BOS, acknowledged that the "preferred solution" for the District's problems involved a new storage tank and pump station that would take years or decades and would require 'millions of dollars' in capital funding to construct; whereas, the proposed cistern solution was feasible immediately at no cost to the Town and would remain neutral to pressure impacts to the remainder of the properties located in the District.

65. The Town oversaw the installation of the Tabor Road cistern systems and inspected the same following construction.

66. The Town's (former) Building Commissioner and other qualified professionals have observed and attested to proper operation, and the systems have functioned for nearly seven (7) years without any adverse impact on water supply and pressure to the District.

**The 2024 Kempton Road ANR Project**

67. Plaintiff's design professionals have previously determined that with the additional 2.62+/- acres of land discussed in Paragraph 17 of this Complaint, the Property can be developed as a ten (10) lot residential subdivision; however, Plaintiff has opted not to pursue that plan due to the Moratorium related issues that are central to this dispute.

68. In October 2022, Plaintiff was once again denied permission to connect the Project to the public water supply system and his request for water connections for Kempton Road was denied by the Board.

69. Recognizing that the Project was at an indefinite standstill due to the Moratorium, having no realistic time frame of when he would be able to develop the Project and having been stripped of any ability to develop and use the Property as permitted by law and the local

bylaws, Plaintiff determined to change direction and seek approval of a smaller development that would incorporate the cistern based approach employed on Tabor Road.

70. On or about April 10, 2024, Plaintiff combined his additional 2.62 acres of land with the remaining 13.43 acres of land from the Original Parcel, then applied for and received a special permit and ANR endorsement from the Planning Board to divide the Property into three (3) lots (two typical lots and one retreat lot) (hereinafter the "Kempton Road ANR Project").

71. Following the issuance of Planning Board approval for the Kempton Road ANR Project, Plaintiff and his design professionals informally corresponded with various Town Officials, including the DPW Director and the Town Manager regarding connecting those three (3) ANR lots to the Town's public water supply system with the same design components as those that were approved by the Tabor Road properties in March 2019.

72. Plaintiff's many attempts to work with the Town and resolve the water connection issue(s) for the Kempton Road ANR Project were met with obstinance, obstruction and delay from the Town, including being encouraged by the Town Manager to 'file litigation' because the Town was at a "stalemate" with respect to said Project.

73. Having exhausted every avenue to attempt to come to an amicable resolution with the Town regarding the dispute, Plaintiff determined to proceed with a formal application to the BOS to connect the Kempton Road ANR Project lots to the Town's public water supply system.

74. Accordingly, on or about May 8, 2025, Plaintiff's hydraulic engineer filed an application with the DPW to connect the three (3) Kempton Road lots using the identical cistern design

previously designed and vetted by two expert hydraulic engineering firms and the DPW Director and approved and installed on Tabor Road.

75. Plaintiff's Kempton Road ANR Project's cistern proposal(s) are materially identical to the Tabor Road systems, installed nearly seven (7) years ago, which systems are hydraulically neutral to District pressure as they refill during off-peak hours and are on timers set by the DPW.

76. The BOS originally scheduled the hearing on Plaintiff's application for July 14, 2025 but abruptly rescheduled that meeting just days before the hearing until September 8, 2025.

77. The stated basis for the BOS's delay of the hearing on Plaintiff's application(s) was a newly adopted policy of the BOS to only hold meetings as the Water and Sewer Commission on a quarterly basis. The adoption of such a policy immediately after Plaintiff filed his applications evidences an intent to delay action on the applications.

78. On September 8, 2025, the BOS opened its public hearing on the Kempton Road ANR Project.

79. After Plaintiff's hydraulic engineer completed his presentation, the BOS recognized that the application contained no deficiencies yet arbitrarily and capriciously voted to continue the matter until December 8, 2025, on the basis that additional input was needed from the DPW regarding its proposed upgrades to the existing pumping station in the District.

80. The BOS did not request any additional information from Plaintiff, nor requested that the plans be modified in any way.

81. The BOS continued the hearing until December 8, 2025, over the objection of Plaintiff's engineer who specifically requested, but was denied, a vote that evening.

82. On September 9, 2025, Plaintiff requested that the BOS schedule a vote on September 22, 2025 and in so doing, emphasized that the Kempton Road ANR Project's public water supply connection design was identical to the Tabor Road cistern systems that had been approved by the BOS and constructed nearly seven (7) years earlier.

83. The BOS declined to reschedule the hearing on the Kempton Road ANR Project any earlier than December 8, 2025.

84. On November 25, 2025, the Town Manager's Administrative Assistant informed Plaintiff that the BOS would not hear the Kempton Road ANR Project on December 8, 2025, and had it formally taken off the meeting agenda.

85. No explanation was provided as to why the BOS would not hear the Project on that date, nor was a new hearing date provided.

86. To date, despite repeated requests by Plaintiff and his representatives, the Town has arbitrarily and capriciously refused to reschedule the hearing and/or vote on the Kempton Road ANR Project's application.

87. At all relevant times, the Select Board (BOS) sat as the Board of Water and Sewer Commissioners and exercised final policymaking authority over municipal water connections within the Town.

88. The Chairman of the BOS currently presiding over Plaintiff's Kempton Road ANR Project was also the Chairman of the BOS in March 2019 when it approved the Tabor Road connections.

89. At all times material hereto, the Select Board (BOS) acted as Water and Sewer Commissioners and exercised its policy and custom in taking the actions and/or for its inactions set forth in this Complaint.

90. The BOS's 2019 approval of Tabor Road emphasized avoiding arbitrary and capricious discrimination between similarly situated applicants, yet the Town has repeatedly delayed and refused to vote on Plaintiff's materially identical cistern applications in the same District.

91. As a direct and proximate result of the Moratorium's imposition without sunset, the Town's selective approval of identically situated applicants (Tabor Road), while contemporaneously blocking Plaintiff's applications, and its most repeated refusal to vote on the Plaintiff's recent applications, Plaintiff has been deprived (be it temporarily or permanently) of the economically viable use and enjoyment of his Property.

92. Plaintiff is similarly situated to the Tabor Road applicant with respect to the Property's location in the District, the engineering design, timing of off-peak refill, and pressure neutrality.

93. The Town has arbitrarily and capriciously treated Plaintiff differently, denied him timely and fair process, and subjected him to indefinite, standardless obstruction with respect to the development of the Property.

94. The Town approved four (4) materially identical cistern-based water connections on Tabor Road in March 2019 within the District but has refused to vote on, and has effectively blocked, Plaintiff's three (3) materially identical cistern-based applications for the Kempton Road lots.

95. Plaintiff's submissions to the BOS included affidavits, which clearly demonstrated that the District's water supply is more than adequate and that the issue is pressure—neutralized by off-peak cistern systems, refilling in a manner identical to those approved and installed on the Tabor Road properties.

14

96. Town officials' own statements and internal communications reflect recognition that the cistern approach "will work" and has operated without any adverse effects for nearly seven (7) years on Tabor Road.

97. The Town has failed to articulate any published standards or rational basis distinguishing Plaintiff's applications from the approved Tabor Road systems.

98. The Town has acknowledged that limitations in the District relate to water pressure and pump station capacity rather than water supply; the cistern systems address pressure impacts by off-peak refilling; Affidavits from experienced professionals corroborate neutral pressure impacts from cistern-equipped homes in the District.

99. Plaintiff has suffered concrete, particularized, and ongoing harms, including loss of economically beneficial use, severe delay costs, carrying costs, lost development opportunities, and diminution of property value, directly and proximately caused by Defendant's acts and omissions.

100. Plaintiff's harm and damages have been continuous and uninterrupted for years.

101. Upon information and belief, the Moratorium was not properly enacted by the BOS.

102. Additionally, nearly a decade after voting to impose the Moratorium, the Town has failed to take any corrective action to resolve the issues cited as the basis for doing so.

### COUNT I
### Against the Defendants for Violation of 42 U.S.C. § 1983 – Regulatory Taking Without Compensation – Fifth and Fourteenth Amendments to the Constitution of the United States

103. Plaintiff restates and incorporates by reference the allegations contained in Paragraphs 1-104 of this Complaint as if fully set forth herein.

104. The 5th Amendment of the U.S. Constitution as made applicable to the Commonwealth by the 14th Amendment provides that the government may not take property without providing just compensation to the person who owns said property.

105. On May 11, 2016, Plaintiff (through his predecessor), received Definitive Subdivision Plan approval from the Uxbridge Planning Board to construct a seven (7) lot residential subdivision on the Property.

106. The prior subdivision project is a use that is permitted by right on the Property pursuant to the Uxbridge Zoning Bylaws and State law.

107. Approval of the Definitive Subdivision Project vests Plaintiff with property rights to develop the Property in accordance with the approved plans pursuant to M.G.L. c. 40A § 6.

108. Unbeknownst to Plaintiff, a month prior to Planning Board approval, the BOS passed the Moratorium.

109. Despite repeated requests, since 2016, the Town refused to permit Plaintiff to connect the Project to the public water supply system in the District, thereby prohibiting Plaintiff from constructing the subdivision as designed and approved by the Town's Planning Board.

110. Following the approval of the public water supply connections for the Tabor Road lots by the BOS, the Plaintiff attempted to mitigate his damages by submitting a different, less intensive design for development of the Property, which incorporated the same cistern system safeguards as the Tabor Road lots -*to wit*- the Kempton Road ANR Project.

111. Plaintiff received a special permit and ANR endorsement from the Planning Board for the Kempton Road ANR Project on April 10, 2024.

112. Following Planning Board approval, Plaintiff made proper application to the BOS to connect the Kempton Road ANR Project lots to the Town's public water supply system.

113. The BOS arbitrarily and capriciously delayed hearing Plaintiff's application for four (4) months.

114. Once the BOS heard the Plaintiff's application on September 8, 2025, it arbitrarily and capriciously refused to render a decision despite having all of the information necessary to do so and continued the hearing until December 8, 2025.

115. On November 25, 2025, the BOS abruptly cancelled the December 8, 2025, hearing without providing any reason and have refused to reschedule the hearing or take any final action on the application.

116. Prior to (Omega) purchasing the Property and until April 2016, there was no moratorium on public water supply connections in the District nor any indication that future connections thereto would be limited in any way.

117. Plaintiff has invested hundreds of thousands of dollars in purchasing and developing the Property with the reasonable expectation that he would be able to develop the Property as a residential subdivision in accordance with the Town's Zoning Bylaws and State law.

118. Upon information and belief, since the Moratorium was adopted in 2016, there have been at least Twenty-Two (22) new connections made to the Town's public water supply system located in the District, while the Town has contemporaneously taken all action necessary to prevent Plaintiff from connecting the Property thereto.

119. As a direct and proximate result of the Town's acts and omissions set forth herein, Plaintiff is indefinitely prohibited from developing the Property as either a seven (7) lot residential subdivision project or the more recently approved, smaller Kempton Road ANR Project.

120. The Town's acts and omissions set forth herein have had catastrophic economic consequences for Plaintiff, who has invested hundreds of thousands of dollars in furtherance of development of the Property, which has been effectively prohibited by the Town by way of the Moratorium and BOS's acts and omissions.

121. The Town has significantly interfered with the Plaintiff's reasonable investment backed expectations in purchasing the Property.

122. As a direct and proximate result of the Town's acts and omissions, Plaintiff is not able to profitably develop the Property for uses that are permitted by right and/or permit.

123. The Moratorium does not substantially advance any legitimate state interest.

124. The Moratorium denies Plaintiff economically viable uses of the Property.

125. The Moratorium as enacted and applied, is arbitrary, capricious and irrational and was enacted with the sole purpose of precluding Plaintiff from ever developing the Property.

126. Upon belief, the Moratorium was not properly enacted by the Town and as such, constitutes an illegal and *ultra vires* action, thereby rendering it null, void and unenforceable against Plaintiff (and others).

127. By virtue of the conduct described above, the Town has taken Plaintiff's Property without providing him just compensation, therefore.

128. The Town's acts and omissions have deprived Plaintiff of his property rights, either permanently or temporarily.

129. By engaging in the conduct described above Defendant, acting under color of law, knowingly, intentionally, egregiously, arbitrarily, capriciously, corruptly and outrageously disregarded the law, violating Plaintiff's property rights.

130. As a direct and proximate result of the Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered substantial monetary damages and other irreparable harms and damages.

**WHEREFORE**, Plaintiff requests an award of all damages provable at trial including compensatory, consequential, restitution, and other damages plus interest, costs and reasonable attorney fees, as well as any equitable relief as may be appropriate.

### COUNT II
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201 & M.G.L. c. 231A § 1 *et seq*. that the Defendants have Taken Plaintiff's Property Without Just Compensation in Violation of Article 10 of the Declaration of Rights of the Commonwealth of Massachusetts

131. Plaintiff restates and incorporates by reference the allegations contained in Paragraphs 1-130 of this Complaint as if fully set forth herein.

132. Part 1, Article 10 of the Declaration of Rights of the Commonwealth of Massachusetts provides, in relevant part:

> "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. He is obliged, consequently, to contribute his share to the expense of this protection; to give his personal service, or an equivalent, when necessary: but no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. In fine, the people of this commonwealth are not controllable by any other laws than those to which their constitutional representative body has given their consent. And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."

133. By virtue of the conduct described above, the Town has taken Plaintiff's property without providing just compensation, therefore.

134. The Town's acts and omissions have deprived Plaintiff of his Property rights.

135. By engaging in the conduct described above Defendants, acting under color of law, knowingly, intentionally, egregiously, arbitrarily, capriciously, corruptly and outrageously disregarded the law, violating Plaintiff's property rights.

136. As a direct and proximate result of the Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered substantial monetary damages and other irreparable harms and damages.

**WHEREFORE**, Plaintiff requests an award of all damages provable at trial including compensatory, consequential, restitution, and other damages plus interest, costs and reasonable attorney fees, as well as any equitable relief as may be appropriate.

<u>**COUNT III**</u>
<u>**Violation of 42 U.S.C. § 1983– Equal Protection (Class of One)– Fourteenth Amendment to the Constitution of the United States - Plaintiff Against all Defendants**</u>

137. Plaintiff restates and incorporates by reference the allegations contained in Paragraphs 1-136 of this Complaint as if fully set forth herein.

138. The rights of Equal Protection secured to Plaintiff pursuant to the Fourteenth Amendment to the Constitution of the United States have at all times herein been in existence and clearly established.

139. Defendants had accordingly been given fair and clear warning that actions of the type described herein and respectively attributed to them were and are unlawful under State law.

140. Defendants' disparate conduct includes but is not limited to allowing over twenty (20) new public water supply connections in the District during the pendency of the Moratorium, while contemporaneously denying Plaintiff.

141. The Town has permitted another developer to connect its four (4) Tabor Road unimproved lots to the public water supply system in the District, predicated upon those properties installing the cistern systems discussed *supra*.

142. The modified Kempton Road ANR Project has a materially identical cistern system design as those that were approved by the BOS for the properties on Tabor Road in or about March 2019, yet the BOS has refused to approve Plaintiff's Project.

143. At a minimum, the Tabor Road properties are similarly situated comparators to the Kempton Road ANR Project, as both properties are in the same District and in close proximity to one another.

144. Defendants knew or reasonably should have known and understood that they were violating Plaintiff's Equal Protection rights under the United States Constitution by and through their acts and omissions discussed *supra*.

145. Defendants' actions toward Plaintiff were made under the color of State law and thus were violative of Plaintiff's rights to equal protection under the United States Constitution, thereby proximately causing it damages and irreparable harms.

146. Plaintiff is accordingly entitled to compensatory and/or presumed damages and/or exemplary or punitive damages from Defendants.

**WHEREFORE**, Plaintiff requests an award of all damages provable at trial including compensatory, consequential, restitution, and other damages plus interest, costs and reasonable attorney fees, as well as any equitable relief as may be appropriate.

## COUNT IV
### Violation of 42 U.S.C. § 1983 – Substantive Due Process Pursuant to the Fourteenth Amendment to the United States Constitution – Plaintiff Against All Defendants

147. Plaintiff restates and incorporates by reference the factual allegations of paragraphs 1-146 as if fully set forth herein.

148. Defendants, including the BOS, have purposefully, maliciously and deliberately attempted to deny Plaintiff the lawful use of his Property and in doing so, acted under color of state law.

149. The egregious conduct exhibited by the Defendants was done knowingly, intentionally, and was not subject to any privileged official conduct.

150. The Defendants' actions constituted gross misconduct, shocking the judicial conscience, arbitrary, capricious, and violative of Plaintiff's substantive rights under the due process clause of the Fifth Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution, and through 42 U.S.C. § 1983.

151. As a direct and proximate result of such Defendants' violation of the substantive due process rights, Plaintiff has suffered substantial monetary damages, has lost potential lot sales, and has otherwise suffered severe harm.

**WHEREFORE**, Plaintiff requests an award of all damages provable at trial including compensatory, consequential, restitution, and other damages plus interest, costs and reasonable attorney fees, as well as any equitable relief as may be appropriate.

## COUNT V
### Violation of 42 U.S.C. § 1983 – Procedural Due Process Pursuant to the Fourteenth Amendment to the United States Constitution – Plaintiff Against All Defendants

152. Plaintiff restates and incorporates by reference the factual allegations of paragraphs 1-151 as if fully set forth herein.

153. Defendants, including the BOS, have purposefully, maliciously and deliberately attempted to deny Plaintiff the lawful use of his Property and in doing so, have acted under color of state law.

154. The egregious conduct exhibited by the Defendants was done knowingly, intentionally, and was not subject to any privileged official conduct.

155. The BOS has failed to provide Plaintiff a timely, just, fair and objective hearing on the Kempton Road ANR Project's application to connect to the Town's public water supply system.

156. Most recently, the BOS has arbitrarily and capriciously continued and cancelled hearings related to the Project's request for water connection approvals using cistern systems, despite having all information necessary for a decision and noting that there were no deficiencies with the Plaintiff's application.

157. After cancelling the December 8, 2025, hearing without reason, the BOS has refused to reschedule the hearing and/or take up the application for a vote.

158. Plaintiff has property rights in developing the Property for the seven (7) lot subdivision Project and for the Kempton Road ANR Project pursuant to Chapter 40A and the Constitution.

159. The Town's acts and omissions have deprived Plaintiff of those property rights.

160. Upon belief, the BOS's September 8, 2025, hearing was meaningless because its outcome was pre-ordained and/or the BOS's bias against Plaintiff was so severe that it undermined the concerns and goals of the hearing.

161. On September 8, 2025, Plaintiff was deprived of a meaningful opportunity to invoke the BOS's discretion, and thus there was no possibility that a mistaken decision by the BOS could have been avoided.

162. The BOS's September 8, 2025, proceedings were not constitutionally sufficient.

163. By refusing to conclude the public hearing or vote on the Plaintiff's applications, the Defendants have deprived the Plaintiff of due process—effectively denying the Plaintiff's applications without taking any appealable action.

164. There is no adequate state-law remedy for this deprivation of due process.

165. As a direct and proximate result of such Defendants' violation of his constitutional rights, Plaintiff has suffered substantial damages and irreparable harms.

**WHEREFORE**, Plaintiff requests an award of all damages provable at trial including compensatory, consequential, restitution, and other damages plus interest, costs and reasonable attorney fees, as well as any equitable relief as may be appropriate.

## <u>COUNT VI</u>
### <u>Award of Attorney's Fees Pursuant to 42 U.S.C. § 1988</u>

166. Plaintiff restates and incorporates by reference the factual allegations contained in Paragraphs 1-165 of this Complaint as if fully set forth herein.

167. Counts I & III-V of this Complaint constitute proceedings to enforce Plaintiff's civil rights within the meaning of 42 U.S.C. § 1988.

168. Plaintiff is entitled to request an award of reasonable attorney's fees with regard to said fees incurred in the course of this litigation.

**WHEREFORE**, Plaintiff respectfully requests the Court award him reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

<u>COUNT VII</u>
<u>Declaratory Judgment pursuant to 28 U.S.C. § 2201 and M.G.L. c. 231A § 1 *et seq.* –</u>
<u>Invalidity of the Moratorium, both as Enacted and Applied.</u>

169. Plaintiff restates and incorporates by reference the factual allegations of paragraphs 1-158 of this Complaint as if fully set forth herein.

170. An actual controversy exists regarding the validity, enforcement, and scope of the Town's asserted Moratorium on new water connections in the District.

171. Specifically, upon information and belief, the Moratorium was never reduced to a proper written order, published, codified, defined as to scope, duration, or criteria for exceptions, or otherwise made accessible to the public beyond the initial April 2016 vote of the BOS.

172. Upon information and belief, since adopting the Moratorium, the Town has approved over twenty (20) new connections, including the four (4) Tabor Road cistern-based lot connections in the same service area as the Property, without any formal action to lift, amend, or create published exceptions to the Moratorium.

173. Simultaneously with those new connections, the Town has prohibited Plaintiff from connecting the original Project and/or the Kempton Road ANR Project to its public water supply system without legitimate basis or reason.

174. Upon information and belief, since adopting the Moratorium in 2016, the Town has failed to take any substantial action to remedy whatever defects that may exist with the public water supply system in the District.

175. Upon belief, Town Meeting may not have properly voted to designate the BOS as the "Board of Water Commissioners" as required by M.G.L. c. 41 §§ 21 and/or M.G.L. c. 40 § 39A.

176. Accordingly, Plaintiff seeks a declaration that the Moratorium is *ultra vires*, void and unenforceable against him and cannot be invoked to further deny or delay any applications to connect the Property to the Town's public water supply system.

177. As a direct and proximate result of such Defendants' acts and omissions, Plaintiff has suffered substantial damages and irreparable harms.

**WHEREFORE**, Plaintiff respectfully requests judgment enter in his favor and that the Court grant the following relief:

    a) A declaratory judgment holding that that Defendants' enactment of the Moratorium is invalid;

    b) A declaratory judgment holding that Defendants' continued enforcement of the Moratorium is void and unenforceable against Plaintiff;

    c) An order enjoining Defendant from denying or delaying action on Plaintiff's applications based on the Moratorium and requiring prompt, non-arbitrary adjudication under objective, published standards consistent with the Constitution and State Law;

    d) Award Plaintiff all damages provable at trial;

    e) Award Plaintiff prejudgment interest, costs and reasonable attorney's fees; and,

    f) Award Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

***Plaintiff hereby demands a trial by jury on all counts so triable and designates Eric S. Brainsky as his trial counsel.***

Respectfully Submitted

LEE JUNDANIAN

By and through his attorneys,

Dated: February 17, 2026                /s/ Eric S. Brainsky

Eric S. Brainsky (BBO#663136)
Michael E. Levinson (BBO#666108)
Brainsky Levinson, LLC
1543 Fall River Avenue, Suite 1
Seekonk, MA 02771
Ph:     (508) 557-1910
Fax:    (508) 557-1905
ebrainsky@brainskylevinson.com
mlevinson@brainskylevinson.com